LOUIE v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit.   November 16, 1914.)

No. 2403.

**1. CRIMINAL LAW (§ 200\*)—FORMER ACQUITTAL—IDENTITY OF OFFENSES—CONSPIRACY—AIDING AND ABETTING.**

By a prior indictment, on which accused was acquitted, he was charged with conspiring with R. to import opium into the United States for smoking; the indictment charging as an overt act that R., after the formation of the conspiracy and during its continuance, to effect the object thereof, on March 5, 1913, did have in possession, conceal, and fraudulently transport into the United States 64 five-tael tins of opium prepared for smoking, contrary to law, etc. By a subsequent indictment against accused, it was charged that on March 5, 1913, R. committed the offense of receiving, concealing, buying, selling, and facilitating the transportation of the same 64 five-tael tins of opium for smoking after the same had been imported into the United States contrary to law, which in effect was the same overt act charged against R. in the first indictment, and then alleged that accused aided and abetted R. in the commission of that offense. *Held*, that there was no identity between the offenses charged in the two indictments, and hence that accused's acquittal under the former indictment was no bar to his conviction under the latter.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 347, 386–409; Dec. Dig. § 200.\*]

**2. CRIMINAL LAW (§ 772\*)—INSTRUCTIONS—PRIOR ACQUITTAL.**

Accused having previously been acquitted of conspiracy to import opium into the United States contrary to law, on the trial of an indictment for aiding and abetting another to import the same opium into the United States, the court charged that the jury should separate any plan or combination of the men that was charged in the indictment for conspiracy, of which accused had been acquitted, from the charge in question, that accused had aided R. in receiving the opium, and that unless accused's conversations with R. amounted to more than a general keeping in touch with him, or a general agreement, and unless accused knowingly gave him knowledge of where he could get opium, then the jury should not consider it, and if they had a reasonable doubt they should not consider it as supporting the charge of aiding, because he, having been acquitted, was entitled to that reasonable doubt, was too favorable to accused, and not objectionable by him.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1812–1814, 1816, 1817; Dec. Dig. § 772.\*]

**3. CRIMINAL LAW (§ 384\*)—APPEAL—RULINGS ON EVIDENCE—REVIEW.**

Where a criminal prosecution rests, in part at least, on circumstantial evidence, the court's rulings admitting offered evidence of that character will be sustained, if it tends even remotely to establish the ultimate fact.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 848; Dec. Dig. § 384.\*]

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Edward E. Cushman, Judge.

Charlie Louie was indicted for violating Act Cong. Feb. 9, 1909, c. 100, 35 Stat. 614 (Comp. St. 1913, § 8801), entitled "An act to prohibit the importation and use of opium for other than medicinal purposes." Defendant having interposed a plea of former acquittal to certain

counts of the indictment, including the second, the United States demurred to the plea, and, the demurrer being sustained, he was found guilty on count 2, and he brings error. Affirmed.

By an indictment filed in the court below on April 2, 1913, the defendant and one James A. Ralston were jointly charged with a violation of section 5440 of the Revised Statutes of the United States (section 37 of the Criminal Code; Act March 4, 1909, c. 321, 35 Stat. 1096 [Comp. St. 1913, § 10201]). That section provides as follows: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be liable to penalty of not less than one thousand dollars and not more than ten thousand dollars, or imprisonment not more than two years."

It was alleged in the indictment that on the 1st day of September, 1912, the defendants conspired to commit an offense against the United States, "by corruptly, willfully, knowingly, and fraudulently agreeing together fraudulently and knowingly to import and bring into the United States, as aforesaid, opium prepared for smoking, and to receive, conceal, buy, sell, and facilitate the transportation, concealment, and sale of such opium, knowing the same to have been fraudulently imported, contrary to law as aforesaid." The offense which it was charged the defendants conspired to commit was a violation of section 3082 of the Revised Statutes (Comp. St. 1913, § 5785), which provides as follows: "If any person shall fraudulently or knowingly import or bring into the United States, or assist in so doing, any merchandise, contrary to law, or shall receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported contrary to law, such merchandise shall be forfeited and the offender shall be fined in any sum not exceeding five thousand dollars nor less than fifty dollars, or be imprisoned for any time not exceeding two years, or both. Whenever, on trial for a violation of this section, the defendant is shown to have or to have had possession of such goods, such possession shall be deemed evidence sufficient to authorize conviction, unless the defendant shall explain the possession to the satisfaction of the jury."

The subject-matter of the conspiracy, the objects thereof, and the means by which such objects were to be effected were fully set forth in the indictment. From the allegations thereof it appeared that the principal object of the conspiracy was that the defendant Ralston should go into the Dominion of Canada and there receive opium for smoking purposes; that he should bring such opium into the United States, and that the defendant Louie should receive it, and should conceal, transport, and sell the same; that the defendant Louie should furnish Ralston with money with which to pay the expenses of the trip into Canada, and with which to purchase the opium; and that the defendant Louie should pay to Ralston certain sums of money as his reward and compensation from the proceeds arising from the sale of the opium, the balance of such proceeds to be retained by Louie. It was further alleged in the indictment that after the formation of the conspiracy, and during its continuance, to wit, on March 5, 1913, to further effect the object of the conspiracy, Ralston had in his possession and concealed in the city of Seattle, Wash., and fraudulently and knowingly transported and facilitated in the transportation, and aided and assisted in transporting, 64 five-tael tins of opium prepared for smoking; Ralston then and there well knowing that such opium had theretofore been imported and brought into the United States contrary to law. This last charge is the overt act required by the statute to complete the offense of conspiracy. Various other acts on the part of the defendant Louie and Ralston, alleged to have been performed in furtherance of the conspiracy, were set forth in the indictment. They are immaterial to any issue in the present case. Upon the trial of the case the defendant Louie was found not guilty by the jury, and the judgment of the court entered thereon has not been reversed, and is still in full force and effect.

·On September 12, 1913, a second indictment was filed in the court below against the defendant Louie and James A. Ralston for violation of the act of February 6, 1909, entitled "An act to prohibit the importation and use of opium for other than medicinal purposes." 35 Stat. 614. The indictment was in eight counts. The second count, which is the only one with which we are concerned, was as follows: "On or about the 5th day of March, 1913, one James A. Ralston, within the Northern division of the Western district of Washington, and within the jurisdiction of this court, did willfully, knowingly, unlawfully, and feloniously receive, conceal, buy, sell, and facilitate the transportation, concealment, and sale of certain merchandise of foreign manufacture, to wit, sixty-four (64) five-tael tins of opium, prepared for smoking, after said opium had been imported into the United States contrary to law, and the said opium, prior to the time when the said James A. Ralston did receive, buy, sell, and facilitate the transportation, concealment, and sale thereof, as aforesaid, had been willfully, knowingly, unlawfully, and feloniously imported into the United States, into the Northern division of the Western district of Washington, contrary to law, from some foreign country to the grand jurors unknown, by some person or persons to the grand jurors unknown, he, the said James A. Ralston, then and there well knowing that the same had been imported as aforesaid into the United States contrary to law; * * * that Charlie Louie did then and there, on or about said 5th day of March, 1913, willfully, knowingly, unlawfully, and feloniously aid, abet, counsel, command, induce and procure the said James A. Ralston, as aforesaid, willfully, knowingly, unlawfully, and feloniously to receive, conceal, buy, sell, and facilitate the transportation, concealment, and sale of said opium, prepared as aforesaid, after the same had been imported contrary to law, as aforesaid, they, the said James A. Ralston and said Charlie Louie, then and there well knowing that the same had been imported, as aforesaid, into the United States contrary to law. * * *"

The charge that the defendant Louie aided, abetted, counseled, commanded, induced, and procured Ralston to commit the offense charged against him is based upon section 332 of the Criminal Code, approved March 4, 1909 (35 Stat. 1152, c. 321 [Comp. St. 1913, § 10506]), which provides: "Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal."

The defendant Louie interposed a plea of former acquittal to certain counts of the indictment, including the second count, based upon the indictment filed against him on April 2, 1913, and the subsequent acquittal by the jury thereunder. The United States demurred to the plea of former acquittal, and the demurrer was sustained. Louie was found guilty of count 2, and not guilty of the other counts.

Vanderveer & Cummings, of Seattle, Wash., for plaintiff in error.
Clay Allen, U. S. Atty., and Albert Moodie, Asst. U. S. Atty., both of Seattle, Wash., for the United States.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). [1] 1. It is assigned as error that the court sustained the demurrer to the defendant's plea of former acquittal. The objection to the order of the court presents the question whether upon the face of the record it appears as matter of law that the offense charged in the second count of the second indictment, upon which the plaintiff in error was tried and convicted, was the same offense as that charged in the first indictment, upon which he had been previously tried and acquitted. The contention is that the offense which it was charged the defendants Louie and Ralston conspired to commit, as set forth in the first indict-

ment, is identical in substance and effect with the offense which it is charged Louie aided and abetted Ralston to commit as set forth in the second count of the second indictment.

The question has two aspects. It is charged in the first indictment that in September, 1912, Ralston and Louie conspired, combined, and confederated together to import and bring into the United States opium prepared for smoking, and to receive, conceal, buy, sell, and facilitate the transportation, concealment, and sale of such opium, knowing the same to have been fraudulently imported contrary to law; and as an overt act entering into that conspiracy it is charged that the defendant Ralston, after the formation of the conspiracy and during its continuance, and to effect the object thereof, did, on the 5th day of March, 1913, have in possession and conceal, and fraudulently and knowingly transport and facilitate the transportation of 64 five-tael tins of opium prepared for smoking, knowing that such opium had been fraudulently and knowingly imported and brought into the United States contrary to law. In the second count of the second indictment it is charged that on the 5th day of March, 1913 (the date of the overt act in the first indictment), the defendant Ralston committed the offense of receiving, concealing, buying, selling, and facilitating the transportation of 64 five-tael tins of opium prepared for smoking, after the same had been imported into the United States contrary to law. This is in effect the overt act charged against Ralston in the first indictment. It is further charged that the defendant Louie aided and abetted Ralston in the commission of the offense. In the first indictment, Louie is not charged as an actor in the commission of the offense constituting the overt act. That act is charged in the indictment to have been committed by Ralston alone; while in the second indictment Louie is charged with having aided and abetted Ralston in committing the offense.

There is plainly a lack of identity in the two indictments with respect to this charge as against the defendant Louie. But plaintiff in error contends, further, that the charge that Louie aided and abetted Ralston to commit the offense described in the second indictment is equivalent to the charge that the defendants Ralston and Louie conspired to commit the offense charged in the first indictment; that the charge of conspiring to commit an offense involved the co-operation, association, and union of two or more persons to commit the offense; and that the charge that one person aided and abetted another to commit the offense involved the same character of co-operation, association, and union. But Congress has provided that if two or more persons conspire to commit any offense against the United States, and one or more of such parties do any act to effect the object of the conspiracy, all of the parties to such conspiracy shall be liable. Congress has also provided that whoever aids or abets another in the commission of an offense against the United States is a principal in the commission of the offense. These are separate and distinct offenses, and the courts are not authorized to hold as matter of law that one who aids and abets another in the commission of the offense is a conspirator, and may plead an acquittal of a conspiracy charge in bar of a prosecution for the other offense. It is the province of Congress to specify

what acts shall be offenses against the United States, and not the courts. As said by Chief Justice Marshall in United States v. Wiltberger, 5 Wheat. 76, 95 (5 L. Ed. 37):

"It is the Legislature, not the court, which is to define a crime, and ordain its punishment."

In Carter v. McClaughry, 183 U. S. 365, 394, 22 Sup. Ct. 181, 193 (46 L. Ed. 236), Captain Oberlin M. Carter had been tried and convicted by a general court-martial of the United States on four charges. The first and second charges were as follows:

"Charge I: Conspiring to defraud the United States, in violation of the 60th article of war."

"Charge II: Causing false and fraudulent claims to be made against the United States, in violation of the 60th article of war."

The two charges related to the same transaction, and it was contended on behalf of the defendant that the charges were the same, and that the defendant was being twice punished for the same offense. With respect to this feature of the case the Supreme Court said:

"The offenses charged under this article were not one and the same offense. This is apparent if the test of the identity of offenses that the same evidence is required to sustain them be applied. The first charge alleged 'a conspiracy to defraud,' and the second charge alleged 'causing false and fraudulent claims to be made,' which were separate and distinct offenses, one requiring certain evidence which the other did not. The fact that both charges related to and grew out of one transaction made no difference."

We are of opinion that the acquittal of the defendant of the conspiracy charge cannot, as matter of law, be held to be a sufficient plea in bar to a charge of aiding and abetting another to commit an offense. Whether the evidence necessary to sustain the charge in the last case would have sustained the charge in the first case is mainly a question of fact, which we cannot consider, as the evidence is not in the record in either case; but it appears to have been determined in this case by the jury adversely to the contention of the defendant. The jury was advised of the acquittal of the defendant of the charge of conspiracy in the first case, and the court, to limit and restrict the evidence in the present case to the charge against the defendant of aiding and abetting Ralston in committing the offense charged against him, instructed the jury specifically upon that question as follows:

"I instruct you that the defendant has heretofore been accused, tried by a jury, and acquitted of the charge of conspiring, confederating, and agreeing with the said James Ralston to receive, conceal, buy, sell, and facilitate the transportation, concealment, and sale of this same opium. Under the law no man can be twice put in jeopardy for the same offense. Whether you agree with it or not, the judgment of this court in the case I have referred to, in which the defendant was so acquitted, is final and conclusive; and, in your consideration of the case now before you, you will assume that the defendant was not guilty of conspiring, confederating, and agreeing with the said James Ralston, or of advising, counseling, commanding, inducing, or procuring the said James Ralston to receive, conceal, buy, sell, or facilitate the transportation, concealment, or sale of said opium, and will consider merely the question whether the defendant did some physical act by which he aided or assisted said James Ralston in a physical and material way in receiving, concealing, buying, selling, or facilitating the transportation, concealment, or sale of such opium. Unless you find beyond a reasonable doubt that the

defendant did such an act, you will find a verdict of not guilty upon the second count of this indictment."

The foregoing instruction is numbered 7 in the record, and no exception was taken to it. It must be presumed, therefore, that the question whether as a matter of fact the defendant had been acquitted of the offense charged in the second indictment was properly before the court, and that it was fairly presented to the jury upon the evidence. The verdict of the jury disposes of the question as a question of fact.

[2] We do not overlook the exception taken to the subsequent part of the instruction which the plaintiff in error designates as No. 8. The instruction was manifestly in favor of the defendant in limiting the inquiry of the jury as to the character of the act that would consti- . tute aiding and abetting as distinguished from the previous charge of conspiracy. The court said:

"So I hope that you will be able to separate any plan or combination of these two men that was charged in the indictment for conspiracy, of which this defendant has been acquitted, from this charge that the government has made here that he aided Ralston in receiving this opium; but unless these conversations or this telephone message that has been told about was something more than a general keeping in touch with one another or general agreement, unless it was knowingly giving him knowledge of where he could get opium, then you will not consider it. If you have a reasonable doubt about it, you will not consider it as supporting this charge of aiding, because he, having been acquitted, is entitled to that reasonable doubt."

The objection is that this instruction was an erroneous statement of the law, and erroneously instructed the jury that they might consider any act of counseling and advising, if they believed it was of assistance to Ralston in concealing and transporting the opium. The further objection was made that it was in conflict with the previous instruction. The only objection we discover in this instruction is that as a matter of law it was more favorable to the defendant than he was entitled to have given. Carter v. McClaughry, supra. We do not find that it was in conflict with the previous instruction.

This disposes of the entire question of law and fact involved in the plea in bar.

[3] 2. The remaining assignments of error relate to the introduction in evidence over the objection of the defendant of certain letters alleged to have been in a trunk in the residence of the defendant, and also the testimony of certain witnesses called on behalf of the government. We think it unnecessary to consider specifically the objections with respect to either the letters or the testimony. We have carefully considered the questions presented, and are of opinion that no error was committed by the court below, either in the introduction of the letters and testimony or in the charge to the jury relating thereto. All of the testimony in the case is not before us; but it does appear, however, that the government's case rested in part, at least, upon circumstantial evidence. It is familiar law that, where a case rests upon that character of evidence, much discretion is left to the trial court, and its rulings will be sustained, if the testimony which is admitted tends even remotely to establish the ultimate fact. Clune v.

United States, 159 U. S. 590, 16 Sup. Ct. 125, 40 L. Ed. 269; Alexander v. United States, 138 U. S. 353, 11 Sup. Ct. 350, 34 L. Ed. 954; Holmes v. Goldsmith, 147 U. S. 150, 13 Sup. Ct. 288, 37 L. Ed. 118; Moore v. United States, 150 U. S. 57, 14 Sup. Ct. 26, 37 L. Ed. 996; Thiede v. Utah Territory, 159 U. S. 510, 16 Sup. Ct. 62, 40 L. Ed. 237.

The judgment of the court below is affirmed.